UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Rey M. Ortiz Martinez,
    *Plaintiff*,

v.

Salai, et al.,
    *Defendant*.

No. 3:16-cv-01499 (VLB)

March 20, 2018

## ORDER GRANTING MOTION TO WITHDRAW ADMISSIONS AND DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE

Before the Court is Plaintiff's Motion to Withdraw Admissions [Dkt. 46.] which Defendants have opposed [Dkt. 52.] For the reasons set forth below, Plaintiff's Motion is GRANTED and Defendant's Motion for Summary Judgment [Dkt. 28] is DENIED without prejudice to refiling.

I.     Background

Plaintiff brought this action *pro se* alleging excessive use of force and medical malpractice on September 2, 2016. [Dkt. 1.] After an initial review order, Plaintiff's excessive force claim was allowed to proceed against Defendants Johnson, Starks, and Marac and his claim arising out of medical treatment, interpreted by the Court as a deliberate indifference claim, was allowed to proceed against Defendant Johnson. [Dkt. 8.] The Court granted Plaintiff's motion to appoint counsel on December 1, 2016 [Dkt. 15], and attorney James Green appeared to represent Plaintiff on June 15, 2017. [Dkt. 26.] In the intervening period, on April 21, 2017, Defendants sent Plaintiff Requests for

Admission which concerned the February 21, 2014 altercation which is the subject of Plaintiff's Complaint, Plaintiff's drug use, his history of psychiatric treatment, and his alleged failure to comply by the Department of Corrections' administrative remedy procedures. [Dkt. 28-3.] Plaintiff, then unrepresented by counsel, did not respond to the requests for admissions.

On June 21, 2017, Defendants moved for summary judgment as to both of Plaintiff's claims both on the merits and for failure to exhaust administrative remedies. [Dkt. 28-1.] Defendants cited three pieces of evidence in support of their motion: the unanswered requests for admission, and Department of Corrections Administrative Directives 9.6 and 8.9, which outline relevant exhaustion procedures. [Dkt. 28-3, 28-4, 28-5.] On August 4, 2017, the Court granted the parties' joint motion to stay proceedings in light of Attorney Green's recent appearance on behalf of the Plaintiff, to allow the parties to confer regarding withdrawing Plaintiff's default admissions, and to allow Attorney Green time to familiarize himself with the case and either resolve the case out of court or prepare a response to the pending summary judgment motion. [Dkt. 39.] On January 22, 2018, Attorney Green filed a motion to withdraw admissions. [Dkt. 46.] The Court lifted the stay on January 25, 2018. [Dkt. 48.] On February 2, 2018, Defendants filed an opposition to the motion to withdraw admissions. [Dkt. 52.] Plaintiff filed a reply in further support on February 16, 2018. [Dkt. 58.]

II.     **Exhibits to Defendants' Opposition**

Defendants have submitted four exhibits in support of their opposition to the motion to withdraw, each of which concerns the February 21, 2014 altercation.

Two of those exhibits are video recordings. The first video, recorded by Corrections Officer Dunn, shows Corrections Officer Johnson standing outside Plaintiff's cell on February 21, 2014 at 7:00pm. The door to the cell is closed and Plaintiff is not visible. Officer Johnson states Plaintiff is wearing hand restraints and refusing to take them off, and an on-call medical professional has deemed him in need of an injection due to erratic behavior. *Id*. at 0:16. Officer Johnson states a team of officers is suiting up to assist with giving that injection. As Officer Johnson speaks, Plaintiff can be heard yelling in Spanish. *Id*. Officer Johnson then turns to Plaintiff and says "do me a favor, sit on your bunk." *Id*. Plaintiff responds "I need some water." *Id*. Johnson responds "sit on your bunk for me first." *Id*. Plaintiff says "I don't need to sit down." *Id*. Plaintiff's face can then be seen through the window to his cell; he appears not to be wearing a shirt, and is singing in Spanish. *Id*. at 50. Officer Johnson attempts multiple times to engage Plaintiff in conversation or get him to sit on his bunk; Plaintiff is unresponsive and continues singing. *Id*. at 1:30.

The second video shows four corrections officers preparing to confront Plaintiff on February 21, 2014 at 7:30pm to administer a medical injection. The officers are named as Marac, Seeley, Starks, Wolmy, with Mattias recording the video and officer Zayas providing instructions. Plaintiff can be heard yelling in Spanish before the officers enter, but Plaintiff is not visible on the video before the officers enter. Before entering, Officer Zayas states "Ortiz, we're giving you a last and final direct order: sit on your bunk." *Id*. at 3:05. Plaintiff is still not visible on the video, but continues yelling. *Id*. Officer Zayas orders the cell door

3

to be opened and the four officers enter quickly. *Id.* at 3:08. The video then shows the four officers bending down in the corner of the cell with a fifth officer overseeing them. *Id.* at 3:11. Plaintiff cannot be seen on the video, but can be heard calmly stating "I'm basically down, man. I'm basically down." *Id.* at 3:15. Plaintiff then yells in Spanish and can be heard yelling "ow!" *Id.* at 3:25. Another individual wearing scrubs then enters and leans over next to Plaintiff. *Id.* at 3:35. The video does not show the physician's hands. Plaintiff yells "no!" *Id.* at 3:39. The physician then announces, "sharp in," raises a needle within view of the video camera, lowers the needle from view, announces "sharp out," and exits. *Id.* at 3:50. Officer Zayas instructs him to lay on his back, and Plaintiff responds that he will not; Plaintiff tries multiple times to get up, and the officers continue attempting to restrain him. *Id.* at 4:07. Officer Zayas then tells Plaintiff to relax, and states the officers are going to remove his handcuffs. *Id.* at 4:50. Plaintiff agrees. *Id.* The officers crowd around Plaintiff again, who is on the ground in the corner of the cell out of view of the camera. *Id.* at 4:59. Plaintiff begins urgently repeating "take them off!" *Id.* Officer Zayas states "listen to me, stop, we're taking them off, relax!" *Id.* Officer Zayas "stay right where you are, do not move, understand?" Plaintiff responds "yes! Alright!" *Id.* at 5:01. After repeating that exchange multiple times, the officers back away from Plaintiff, who appears naked, and close the cell door as Plaintiff stands in front of them with his arms up. *Id.* at 5:46. Plaintiff can be heard yelling again as the officers walk away. *Id.* At 5:55.

Defendants also offer an incident report dated February 21, 2014, in which

the Department of Corrections officers involved in the incident describe their version of events as consistent with the narrative asserted in Defendants' motion for summary judgment: that Plaintiff was "refusing to take his medication and was acting erratic and kicking the cell door and banging on the window," and DOC employees responded by entering his cell, restraining him, and calling the on-call physician to administer a medical injection. [Dkt. 52-1 at 4.]

Finally, Defendants offer excerpts from Plaintiff's medical records including an entry dated February 21, 2014 which describes Plaintiff as "paranoid" and states he held a pen "as a weapon" during his medical appointment, at which point two lieutenants, a captain, and several corrections officers removed Plaintiff. [Dkt. 51 at 3-4.] Plaintiff then "bang[ed]/punche[d] [the] screen and door with considerable force" and exhibited "posturing such that [Plaintiff] [was] definitely [a] danger [to] others." *Id*. at 4. The Court does not have video footage of this altercation.

### III. Standard of Law

"A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." *Id*. The Court may permit withdrawal of an admission "if it would promote the presentation of the merits of

the action and if the Court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

"The prejudice contemplated by Rule 36(b) is not merely that the party obtaining the admission must, as a consequence of the withdrawal, prove the matter admitted but rather relates to difficulties the party may face in proving its case, such as the availability of key witnesses." *Rosenbaum v. Farr*, 3:11-cv-1994, 2013 WL 6860102, at *1 (D. Conn. Dec. 30, 2013) (allowing withdrawal of default admissions where responses to admission were filed late). Prejudice under Rule 36(b) generally exists where the party will face a "sudden need to obtain evidence upon withdrawal or amendment of an admission." *Vandever v. Murphy*, 3:09-cv-1752, 2012 WL 5507257, at *2 (D. Conn. Nov, 14, 2012) (admonishing defendants for failing to abide by deadlines, but permitting withdrawal of default admissions, where defendants did not serve responses to requests for admission until four months after the extended deadline). The decision whether to allow withdrawal of admissions is within the court's discretion. *Brown v. Semple*, 2017 WL 1190365, at *5 (D. Conn. Mar. 30, 2017) (granting motion to withdraw default admissions).

IV.   Analysis

Plaintiff moves to withdraw his admissions, asserting doing so would allow the case to be decided on the merits and would not prejudice the defendant. Plaintiff also explains his delay by asserting that he suffers from ADHD, which "made it difficult for him to fully comprehend the issues presented in the requests for admissions." [Dkt. 46 at 4.]

6

**Defendants oppose the motion, asserting that certain evidence "plainly establishes what Plaintiff has admitted – there was no excessive force and there was no deliberate indifference to his serious medical need." [Dkt. 52 at 4.] Defendants argue allowing Plaintiff to withdraw his default admissions would not serve Rule 36(b)'s goal of allowing cases to be heard on their merits, because the evidence shows that Plaintiff's claims are not meritorious.**

**In support, Defendants cite *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir. 1983). However, *Donovan* is inapposite. In *Donovan*, the Northern District of New York denied a represented defendant's motion to file late responses to requests for admissions because the motion was filed after a seven-month delay and no motions for extension of time were sought. *Donovan v. Carls Drug Co*, 80-cv-401, 1982 WL 2002, at *3 (N.D.N.Y. Sept. 8, 1982). The Second Circuit upheld the Western District of New York's decision because Rule 36(b) is permissive – it allows a court to withdraw admissions under certain conditions, but does not require it. 703 F.2d at 652. *Donovan* does not stand for Defendants' contention that exhibits which support dismissal of an action prove that allowing withdrawal of default admissions would not aid disposition of the case on the merits.**

**Even considering Defendants' exhibits, they leave a question of material fact. In Plaintiff's Complaint, he alleges that one of the corrections officers stepped on Plaintiff's left shoulder, scraping off a large portion of skin. [Dkt. 1 at ¶ 6.] He also alleges that another officer hit him with his fiberglass shield causing his neck and back to snap, crack, and pop. *Id*. at ¶ 7. Plaintiff also alleges he saw**

7

a corrections officer puncture himself on the wrist with the syringe and then used that same syringe to inject Plaintiff with medication. *Id.* at ¶¶8-9. Because the video recordings chiefly capture the corrections officers' backs and the upper parts of their bodies, do not show all body parts of all corrections officers throughout the altercation, and rarely show the Plaintiff, the recordings are not dispositive of Plaintiff's claims. Nor is the incident report or medical record which appears to memorialize a different incident. Those documents were authored by the Defendants and are self-serving. Whether to credit and how to weigh those statements are questions generally left to the jury. *Martinez v. City of N.Y.*, 684 F. App'x 90, 92 (2d Cir. 2017). There are unresolved questions of fact in this case; allowing Plaintiff to withdraw his admissions will allow the trier of fact to decide those questions and thus will allow this case to be decided on the merits.

In addition, allowing Plaintiff to withdraw his default admissions will not prejudice Defendants. Defendants have not asserted any prejudice which would result from allowing withdrawal of Plaintiff's admissions so that this case may be decided on the merits. The Court can discern none beyond the requirement that Defendants "prove the matter admitted." *Rosenbaum v. Farr*, 2013 WL 6860102 at *1.

Further, any increased burden Defendants will face by having to continue litigating this case is outweighed by the inequity which would result if the default admissions were not withdrawn. If Plaintiff's default admissions are not withdrawn, Defendants will prevail because of a technical violation by a *pro se*

8

plaintiff who did not act unreasonably in failing to respond to the discovery requests. The request for admissions "requests that the Plaintiff admit the truth of the following," and then lists 51 statements regarding the February 21, 2014 altercation, Plaintiff's drug use, his history of psychiatric treatment, and his alleged failure to comply by the Department of Corrections' administrative remedy procedures. [Dkt. 28-3.] The discovery request does not state that Plaintiff must articulate any dispute as to those statements, and gives no notice of the consequences of failing to respond. *Id.* Indeed, the title of the document, "Request for Admissions," suggests that a failure to respond – a failure to abide by the request to admit – would be construed as a denial.

While Defendants were under no obligation to notify the then-*pro se* Plaintiff of the consequences of his failure to respond, the inequity of enforcing default admissions, where Plaintiff was not aware that failing to respond would undermine his case, may be gleaned from the notice requirement for dispositive motions. *See* L. R. Civ. P. 12 (requiring any represented party moving to dismiss the complaint of a self-represented party to file and serve a notice to the self-represented litigant explaining that the failure to respond to the motion in accordance with the Federal Rules of Civil Procedure may result in dismissal of the action); L. R. Civ. P. 56(b) (imposing the same notice requirement for motions for summary judgment). The inequity to Plaintiff which would result from enforcing his default admissions outweighs the burden on Defendants to continue litigating this case.

### V. Conclusion

The Court finds that allowing Plaintiff to withdraw his admissions will facilitate disposition of this case on the merits and will not prejudice Defendants. Accordingly, Plaintiff's motion to withdraw is GRANTED and Defendants' motion for summary judgment, which cites only the unanswered requests for admissions and DOC administrative directives, is denied without prejudice to refiling.

It is so ordered.

Dated at Hartford, Connecticut, this 20th day of March 2018.

                                              /s/
                                       Vanessa L. Bryant
                                       United States District Judge